## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CÉSAR VALENTÍN REYES** | **CIVIL NO. 16-** |
| **Plaintiff** | **AGE DISCRIMINATION; RETALIATION; WRONGFUL DISCHARGE; DAMAGES** |
| **v.** | |
| **SYNOVOS, INC.; SYNOVOS, PUERTO RICO, LLC.; AMGEN MANUFACTURING LIMITED; JUAN MEDINA VISSEPÓ** | **TRIAL BY JURY DEMANDED** |
| **Defendants** | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE COURT:

COMES NOW plaintiff, César Valentín Reyes ("Valentín"), through the undersigned

legal representation, and very respectfully states, alleges and prays:

### I. NATURE OF THE ACTION AND JURISDICTION

1. This action is brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 601 *et seq.*; Puerto Rico Law No. 100 of June 30, 1959, P.R. Stat. Tit. 29 §146 *et seq.*, ("Law No. 100"); Puerto Rico Law No. 115 of December 20, 1991, P.R. Stat. Tit. 29 §194 *et seq.*, ("Law No. 115"), seeking compensatory, double and liquidated damages, back pay, and equitable and injunctive relief to seek redress for defendants' discrimination on the basis of age and retaliation against Valentín. Valentín also seeks relief for his unjust dismissal under Puerto Rico Law No. 80 of May 30, 1976 ("Law No. 80"), P.R. Stat. Tit. 29 §185a *et seq.*

2. This court has jurisdiction to entertain this action pursuant to Section 7 of the ADEA, 29 U.S.C. § 626(c) (1), and under 28 U.S.C. §§ 1331 and 1343(a) (4). Its supplemental

jurisdiction is also invoked pursuant to 28 U.S.C. § 1367(a) to hear the Commonwealth of Puerto Rico law claims because these are so related to the other claims as to which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.   Venue is proper in this district pursuant to 28 U.S.C. §1391 (b)(1) and (2), as the defendants reside in Puerto Rico and all the discriminatory and retaliatory employment practices alleged in the Complaint occurred within the judicial district of Puerto Rico.

## II. THE PARTIES

4.   Valentín is of legal age, a citizen of the United States and a resident of San Juan, Puerto Rico.

5.   Valentín was born on January 16, 1956.

6.   At all relevant times, Valentín was an employee under the provisions of ADEA, 29 U.S.C. §630(f), and is within the protected class under ADEA, 29 U.S.C. §631(a).

7.   Valentín is an employee under all of the federal and local statutes upon which he bases his requests for relief.

8.   Co-defendant Synovos, Inc. (formerly known as "Storeroom Solutions, Inc." and hereinafter referred to as "SS") is, and at all times hereinafter mentioned was, a corporation duly created under the laws of and with its principal place of business in the state of Pennsylvania.

9.   Co-defendant Synovos Puerto Rico, LLC (formerly known as "Storeroom Solutions Puerto Rico, Corp." and hereinafter referred to as "SS-PR") is, and at all times hereinafter mentioned was, a corporation duly created under the laws of and with its principal place of business in the Commonwealth of Puerto Rico.

10. Co-defendant Amgen Manufacturing Limited (hereinafter referred to as "Amgen") is, and at all times hereinafter mentioned was, a corporation duly created under the laws of and with its principal place of business in the Commonwealth of Puerto Rico.

11. At all times relevant to this case, SS was Valentín's employer.

12. At all times relevant to this case, SS-PR was Valentín's employer.

13. At all times relevant to this case, Amgen was Valentín's employer.

14. Valentín began working for SS-PR in 2014 as a Buyer Level 3.

15. At all times relevant to this case, SS-PR did not have a Human Resources Department.

16. At all times relevant to this case, all of SS-PR's Human Resources matters were handled at SS's Human Resources Department in Pennsylvania.

17. SS and SS-PR were a "single employer" with respect to Valentín at all times relevant to this case.

18. In the alternative, SS and SS-PR were "joint employers" with respect to Valentín at all times relevant to this case.

19. At all times relevant to this case, SS-PR and Amgen carried out joint operations, and Valentín provided services to both corporations.  Valentín provided his services as part of the joint operations carried out by SS-PR and Amgen in Puerto Rico.

20. Amgen has a Department of Human Resources in Puerto Rico.

21. Employment matters related to Valentín were handled by SS's Human Resources Department in Pennsylvania as well as by Amgen's Human Resources Department in Puerto Rico.

22. SS, SS-PR and Amgen were a "single employer" with respect to Valentín at all times relevant to this case.

3

23. In the alternative, SS, SS-PR and Amgen were "joint employers" with respect to Valentín at all times relevant to this case.

24. At all times relevant to this case, co-defendant Juan Medina Vissepó ("Medina") was Valentín's direct supervisor.

25. SS, SS-PR and Amgen are "persons" within the meaning of 29 U.S.C. § 630(a).

26. SS, SS-PR and Amgen are "employers" under the ADEA, 29 U.S.C. § 630(b).

27. SS, SS-PR and Amgen are engaged in an "industry affecting commerce" within the meaning of 29 U.S.C. § 630(h).

28. SS, SS-PR and Amgen each employ more than twenty (20) employees on a daily basis as the term is defined in 29 U.S.C. § 630(b).

29. SS, SS-PR and Amgen are "employers" under all of the federal and state provisions of law under which Valentín claims relief.

30. SS, SS-PR and Amgen are "employers" under Law No. 100.

31. SS, SS-PR and Amgen are "employers" under Law No. 115.

32. Medina is an "employer" under Law No. 100.

33. Medina is an "employer" under Law No. 115.

### III. ADMINISTRATIVE PROCEEDINGS

34. Valentín filed a timely charge of employment discrimination and retaliation on the basis of age with the Anti-Discrimination Unit of the Department of Labor ("ADU") and the Equal Employment Opportunity Commission ("EEOC") on December 8, 2015.

35. Valentín then requested the dismissal of the charges and permission to sue in federal court.  The Notice of Right to Sue was issued on July 5, 2016.

36. The instant Complaint is being filed within ninety (90) days of Valentín's receipt of the Notice of Right to Sue.

## IV. THE FACTS

37. Valentín repeats and incorporates each and every preceding allegation as if fully set herein.

38. Valentín was born on January 16, 1956, is currently sixty (60) years of age and is within the protected class under the ADEA.

39. Valentín began working for SS-PR in 2014 as a Buyer Level 3.

40. SS-PR does not have a Human Resources Department in Puerto Rico. All of its Human Resources matters are handled in the SS headquarters in Pennsylvania.

41. At all times relevant to this case, Stacey D. O'Leary ("O'Leary") was SS's Director of Talent Management, Employee Relations & Communications.

42. At all times relevant to this case, O'Leary was totally or partially in charge of managing human resources matters for SS and SS-PR in Puerto Rico.

43. In Puerto Rico, SS-PR carries out operations in conjunction with Amgen.

44. Valentín participated in, and provided services as part of, the joint operations carried out by SS-PR and Amgen.

45. For purposes of the joint operations carried out by SS-PR and Amgen, Amgen requested that the employees meet a series of standards, which Amgen unilaterally imposed.

46. Also, all employees who provided services as part of the joint operations carried out by SS-PR and Amgen had to participate in and pass a series of trainings which were provided by Amgen.

47. Valentín's e-mail address while he worked for defendants was valentinc@amgen.com.

5

48. At all times relevant to this case, Scott Briggs ("Briggs") was the Program Manager of the program pursuant to which SS-PR and Amgen conducted joint operations.

49. In March 2015, Juan Medina Vissepó ("Medina"), who was approximately 39 years of age at the time, also worked for SS-PR.

50. Medina is substantially younger than Valentín.

51. During the month of March 2015, both Valentín and Medina were considered for the position of Site Manager.

52. SS, SS-PR and/or Amgen selected Medina for the position of Site Manager.

53. Medina's promotion to the position of Site Manager entailed an increase in compensation.

54. Valentín was more qualified than Medina to occupy the Site Manager position.

55. Valentín's age was the but-for cause of the decision to select Medina over Valentín for the Site Manager position.

56. Upon his promotion, Medina became Valentín's direct supervisor.

57. After becoming Valentín's supervisor, Medina began to discriminate against Valentín and to turn his work environment into a hostile one because of his age.

58. On May 26, 2015, Medina told Valentín that Valentín "should consider retiring" because "due to your age you could be my father."

59. Two days later, Medina reiterated to Valentín: "I already told you that you should retire."

60. Contemporaneously, Medina deprived Valentín of all of the following work duties:

    a.  Procurement and negotiation;

    b.  Execution of sourcing initiatives;

    c.  Inventory control;

    d.  Computer (Maximo) systems maintenance;

    e.   Customer service for internal and external customers;

    f.   Development, implementation and execution of cost-saving initiatives;

    g.   Ensure purchases ordered were accurate, received and expedited;

    h.   Implementation of inventory items standardization and lean initiatives, maintaining vendor database and setup local vendors as needed, using preferred vendors, generate purchase orders (PO's);

    i.   Verify quoted prices including reorders;

    j.   Expedited orders on timely basis and delivery of items, communicating on delivery issues;

    k.   Run reports as required to determine trends, issues and make recommendations to management; and

    l.   Resolve discrepancies with items received in the warehouse and not entered into the Maximo computer system.

61. The above duties were all integral to Valentín's position as a Buyer Level 3.

62. Medina also assigned Valentín to be supervised by Marisol Ramos ("Ramos").

63. Ramos was a peer of Valentín, and not his supervisor.  The matters as to which Medina assigned Valentín to be supervised by Ramos were matters pertaining to items received in the warehouse with discrepancies but not entered into the Maximo computer system, as well as matters pertaining to new items which were assigned only to Ramos and not to Valentín.

64. Ramos was approximately thirty-six (36) years of age at the time.

65. Ramos is substantially younger than Valentín.

66. The decision to place Valentín under Ramos was motivated by age.

67. It was also intended to overload Valentín with having to work with items that were not even assigned to him in order to pressure him to resign.

68. By doing this, defendants create an age-based hostile work environment for Valentín.

69. On June 26, 2015, Medina threatened Valentín and told him that he would talk to Briggs to have Valentín fired.

70. On June 29, 2015, Medina once again made discriminatory comments such as those made on May 26 and 28, 2015. On that date, Medina told Valentín: "Like I said before, I think you should consider retiring, César, you're too old for this job," and "Respectfully, you could be my father and you should consider retiring."

71. The next day, Medina brought up "mistakes" that Valentín had allegedly made.

72. Medina expressed that the alleged "mistakes" by Valentín were due to him being "too old."

73. On that day, Medina also remarked that Valentín should "wear his eyeglasses at all times" to avoid errors.

74. Contemporaneously with the above comments, between the dates of June 29 and 30, 2016, Medina deprived Valentín of even more duties, to wit:

    a.  Evaluation of IDR's (invoices) discrepancies;

    b.  Determination of IDR discrepancies;

    c.  Contact vendor to resolve discrepancies (if necessary to return goods received);

    d.  Notify accounts payable of IDR Resolution;

    e.  Ensure payment of invoice and/or refund if required; and

    f.  Ensure items on IDR's were accurate on the inventory system (Maximo).

75. On July 3, 2015, Valentín filed an internal complaint of discrimination (hereinafter referred to as "first internal complaint") in SS's Human Resources Department located in Pennsylvania.

76. O'Leary and Briggs received copy of the first internal complaint at their respective offices.

77. Defendants began a retaliatory campaign against Valentín in response to his filing of the first internal complaint.

78. On July 7, 2015, Medina called Valentín on the telephone and asked him "if he could hear well or if he was losing his hearing due to his age" because he had not answered after the first ring.

79. On both July 8 and 9, 2015, Medina made reference to Valentín having dyed his gray hair black, because he "would not look good with jet black hair." Medina warned Valentín to "be careful not to look like an old person who's pretending to look younger."

80. One of Valentín's peers, Ana Romero ("Romero"), was present when Medina made this comment.

81. On July 9, 2015, after instructing Medina to report to Ramos with respect to consumables, Medina asked Valentín: "Are you an accountant? Because [Ramos] is an accountant and she is younger and has a lot of experience."

82. On August 4, 2015, Medina told Valentín that he did not trust his job performance because Valentín made "too many errors because of his age." Medina added that Valentín was old enough to be his father.

83. On August 10, 2015, Medina told Valentín that he had to be "more quick to avoid errors" and that Valentín should "have his eyes examined" because "when we age, we lose eyesight."

84. On August 11, 2015, Medina told Valentín: "Like I said yesterday, you're too old for this job and you need to recognize that."

85. Although Valentín filed his first internal complaint on July 3, 2015, it was not until August 12, 2015 that he received a response from SS and Amgen.

86. On that day, Briggs and O'Leary called Valentín and told him that their conclusion was that what had happened was a "misunderstanding."

87. In response to Valentín's inquiry, Briggs and O'Leary admitted that no interviews had been conducted and stated that they could not take any action.

88. The alleged "misunderstanding" was a pretext to mask the discrimination and retaliation against Valentín because of his age.

89. On August 12, 2015, Valentín sent O'Leary an e-mail confirming their conversation regarding Medina's discrimination and work harassment.  In it, Valentín reiterated his willingness to continue working under Medina's supervision so long as Medina stopped discriminating and harassing him because of his age.

90. Among the examples confirmed by Valentín about Medina's discriminatory comments in his August 12, 2015 e-mail to O'Leary, he listed:

    a.  "You're too old to work here";

    b.  "You're too old to perform your job";

    c.  "You make too many errors.  You should have your eyes examined because of your age"; and

d. "Be careful not to dye your hair not to look like an old man pretending to be young."

91. Valentín complained to O'Leary that the company did not investigate his complaint as required by the applicable policies and regulations.

92. Valentín went on to stress that defendants' conclusion that the situation was a "misunderstanding" was made after speaking only to Medina; asserting that Medina denied everything; and claiming that, hence, no investigation was required.

93. Valentín reiterated to O'Leary his fear of losing his employment.

94. Valentín also confirmed O'Leary's assertion that he would not lose his job.

95. Unfortunately for Valentín, the discrimination continued.

96. On September 1 and 6, 2015, Medina continued his pattern of making age-based discriminatory comments against Valentín, such as those mentioned above.

97. On October 21, 2015, Medina told Valentín "I don't want you here" and, later that same day, he began yelling at Valentín for no reason whatsoever in front of several employees. Medina told Valentín: "You don't work as well as [Ramos].  She received training from [Romero] and did not make mistakes.  You, on other other hand, make mistakes from the beginning.  You see, I'm right, you're too old for this job."

98. Amgen employee Jeanice Ortiz ("Ortiz") was present when Medina yelled at Valentín on October 21, 2015.

99. Ortiz told Valentín that same day that she felt ashamed of the way in which Medina was treating him.

100.    On October 27, 2015, Medina once again chastised Valentín in front of other employees telling him that "at his age" he should be ashamed for his alleged "non-compliance."

101.    Medina then added: "You see, that's why I have said that you should retire but you don't listen.  I can't continue working with you.  I'm gonna talk to [Briggs] about how I feel and see what happens."

102.    On October 29, 2015, Medina handed Valentín a stapler which had attached to it a piece of paper with the word "LOSS" in capital letters.

103.    Medina told Valentín, regarding the stapler, that "he could use it if he felt lost," and, later that same day, Medina also told Valentín: "If I could fire you right now, I would."

104.    Later that same day, Medina ordered Valentín to work with an "IDR problem."

105.    The "IDR problem" to which Medina made reference was a problem with which Medina had previously told Valentín he would not need to work with the same.

106.    In spite of the above, Medina told Valentín that he would now have to "resolve the IDR problem, even if that meant having to come to work on Saturdays and Sundays," and he further added: "I had already told you that you should retire."

107.    Medina's intention was to pressure Valentín into resigning.

108.    On November 3, 2015, due to Medina's continued discriminatory and retaliatory treatment, Valentín filed a second internal complaint of discrimination before SS's Department of Human Resources in Pennsylvania (hereinafter referred to as "the second internal complaint").

109.     Briggs and O'Leary received copy of the second internal complaint at their respective offices.

110.     Valentín engaged in protected conduct under ADEA and Law No. 115 when he submitted his second internal complaint.

111.     Again, Valentín's claims of age discrimination and retaliation were not addressed by defendants.  The only incident was an informal meeting, on November 6, 2015, in which Briggs met with Medina and Valentín at Amgen's employee and spoke of Valentín's allegations in his second internal complaint.

112.     Briggs repeated that the situation had been a "misunderstanding."

113.     This time, however, he expressed his "support[] [for] Medina 100%" and warned them that, "if the situation is not resolved, I'm gonna have to fire someone."

114.     Briggs made it clear to Valentín that, if he dared go to Amgen's Human Resources Department, "there[] [would be] no turning back."

115.     Briggs' threat was intended to chill Valentín from exercising his right to be free from age discrimination and retaliation in his place of work.

116.     Defendants neither investigated nor caused anyone to investigate Valentín's complaints of age discrimination and retaliation.  As with the first internal complaint, it was dismissed as a "misunderstanding."

117.     Defendants' age-based discrimination and retaliation were the but-for cause of the adverse employment actions suffered by Valentín, including his eventual dismissal, shortly thereafter.

118.     On November 9, 2015, Medina boasted that defendants "will not consider [Valentín's] complaints" and that "there [was] nothing [Valentín] could do."

119.    At that time, Medina told Valentín that he "expected changes in the office as a result of the November 6, 2015 meeting."

120.    Medina then echoed Briggs' comment that, if Valentín went to Amgen's Human Resources offices, "there's no turning back."  Medina told Valentín that he should not have told Briggs that he was considering going to Amgen's Human Resources Department.

121.    On November 14, 2015, Medina told Valentín: "Old people like you are stubborn and don't listen to advice."

122.    On November 23, 2015, while at their place of work and during work hours, Medina handed Valentín a piece of paper with no letterhead, directing him to report the next day to the law offices of Pietrantoni, Méndez & Álvarez, LLC.

123.    On November 23, 2015, the law firm of Pietrantoni, Méndez & Álvarez, LLC, represented SS and/or SS-PR and/or Amgen in employment-related matters.

124.    By November 23, 2015, the law firm of Pietrantoni, Méndez & Álvarez, LLC had been consulted and/or retained by SS and/or SS-PR and/or Amgen with respect to Valentín's internal complaints.

125.    When Valentín asked Medina for an explanation regarding the piece of paper, Medina declined to answer Valentín's question and, instead, asked Valentín for his company identification card and also for the card which Valentín used for access to the company.

126.    Valentín responded to Medina that, as far as he knew, he was still an employee of the company, and thus, declined to give either of the two cards to Medina.

127.    Medina became extremely furious when Valentín declined to give him the cards.

128.     Valentín then asked Medina why he had to give him the cards, but Medina again refused to respond.

129.     Sensing that he would be discharged, Valentín sat down at his work computer and began to forward to his personal e-mail address copies of e-mails which constituted evidence of defendants' discrimination and retaliation.

130.     Medina realized that Valentín was gathering evidence, and immediately ordered Valentín to stop doing what he was doing or else he would call security.

131.     Afterwards, on that same day (November 23, 2015), Valentín filed a third internal complaint.  This time, however, he also submitted it to Amgen's Human Resources Department in Puerto Rico.

132.     The next day, Valentín also forwarded to Amgen's Human Resources Department copies of his first two internal complaints.

133.     In Valentín's e-mail forwarding his first two internal complaints to Amgen's Human Resources Department, Valentín also stated that Medina's acts of November 23, 2015 constituted retaliation.  Valentín added that all he wanted was to work in an environment free of discrimination.

134.     Valentín engaged in protected conduct under ADEA when he filed his third internal complaint on November 23, 2015, as well as when he forwarded his first two complaints on the next day and complained of defendants' discriminatory conduct.

135.     Valentín engaged in protected conduct under Law No. 115 when he filed his third internal complaint on November 23, 2015, as well as when he forwarded his first two complaints on the next day and complained of defendants' discriminatory conduct.

136.     On Tuesday, November 24, 2015, when Valentín tried to enter his place of work, he realized that his access card was not allowing him to enter the company's facilities.

137.     A security guard confirmed to Valentín that he no longer had access to the company's facilities.

138.     Defendants barred Valentín from access to his place of work**.**

139.     Valentín went to the meeting at the law offices of Pietrantoni, Méndez & Álvarez, LLC on November 24, 2015 and was received by Attorney Jaime Sanabria Montañez ("Attorney Sanabria").

140.     Attorney Sanabria is an attorney authorized to practice law in the Commonwealth of Puerto Rico.

141.     Attorney Sanabria is an attorney for SS and/or SS-PR and/or Amgen in employment-related matters.

142.     On or before November 23, 2015, Attorney Sanabria had been retained and/or consulted by SS and/or SS-PR and/or Amgen with respect to one or more of Valentín's internal complaints.

143.     During the meeting of November 24, 2015 between Valentín and Attorney Sanabria, no one else was present aside from the two of them.

144.     Valentín asked Attorney Sanabria about Valentín's "employment status" and Attorney Sanabria responded that, as far as he knew, Valentín was still employed and had not been terminated.

145.     Attorney Sanabria then asked Valentín whether he had legal representation.

146.      Valentín responded that he did not, but that he intended to retain legal representation and to file a charge of discrimination and retaliation at the ADU for the discriminatory and retaliatory treatment to which he had been subjected.

147.      Valentín engaged in protected conduct under ADEA and Law No. 115 when he informed Attorney Sanabria, who represented one or more of the defendants at the time, that he intended to file a charge of discrimination and retaliation at the ADU.

148.      Attorney Sanabria then told Valentín that the meeting was rescheduled for the following Tuesday, which was December 1, 2015.

149.      In the days after the November 24, 2015 meeting, the Thanksgiving break took place and defendants' offices were closed.  During those days, Valentín experienced an increase in his anxiety and anguish as a result of defendants' discrimination and retaliation, which was driven by his fear of being unlawfully terminated.

150.      As a result, on Monday, November 30, 2015, Valentín reported for treatment at the Puerto Rico State Insurance Fund Corporation ("SIFC") and filed a claim for an emotional condition.

151.      On that same day, the SIFC issued a notification pursuant to which Valentín could continue working while under treatment ("CT" for its Spanish initials).

152.      Valentín engaged in protected activity under Law No. 115 when he reported for treatment at the SIFC.

153.      On that same day, during the evening, Attorney Sanabria sent a text message to Valentín in which he indicated that the meeting was still scheduled for the next day, December 1, 2015.

154.    However, Attorney Sanabria stated that the meeting would not be held at the law offices of Pietrantoni, Méndez & Álvarez, LLC, and that it would instead be held at the law offices of Schuster & Aguiló, LLC.

155.    Despite his transition to the law offices of Schuster & Aguiló, LLC, Attorney Sanabria remained as the legal representative of SS and/or SS-PR and/or Amgen with respect to Valentín's claims against them.

156.    As a result of Attorney Sanabria's transition, the law firm of Schuster & Aguiló, LLC became the legal representative of SS and/or SS-PR and/or Amgen in matters pertaining to Valentín's claims against them.

157.    Valentín responded to Attorney Sanabria that he would not be able to appear at the meeting of December 1, 2015 because he was sick.

158.    On December 2, 2015, Valentín reported for work.

159.    Valentín went to Medina to provide him with the papers which had been issued to him by the SIFC, including the document which certified that he could continue to work while under treatment ("CT").

160.    Medina refused to receive any of the SIFC papers, and he also refused to allow Valentín to enter the workplace.

161.    Medina's refusal was in retaliation against Valentín for having reported for treatment at the SIFC.

162.    Briggs sent an e-mail to Valentín in which he summoned Valentín to a meeting for that day at 10:00 A.M.

163.    Attorney Sanabria was going to be present at the meeting to which Briggs made reference.

164.    Valentín responded to Briggs that he could not appear at the meeting because he had an appointment with the SIFC.

165.    Valentín also inquired as to why the company's attorney was going to be present, and stated that he could not attend any such meeting until he had legal representation of his own.

166.    Valentín also inquired as to what was his employment status at the company.

167.    Briggs refused to respond regarding Valentín's employment status.

168.    Later that same day, SS sent a letter to Valentín via certified mail.

169.    The letter was signed by O'Leary and was sent to Valentín from SS's Human Resources Department in Pennsylvania.

170.    In the letter, Valentín was notified, consistent with Briggs' previous admonition that he would be discharged if he contacted the Human Resources Department at Amgen, of his termination from employment.

171.    Age-based discrimination and retaliation were the but-for cause of Valentín's termination.

172.    Valentín has suffered severe emotional and economic damages as a result of defendants' discriminatory and retaliatory conduct.

173.    On or around the beginning of the year 2016, Storeroom Solutions, Inc. and Storeroom Solutions Puerto Rico, Corp. changed their names to Synovos, Inc. and Synovos Puerto Rico, LLC, respectively.   Each continued carrying out the same operations under their respective new names.

174.    These new entities are "successor employers" under Puerto Rico Law No. 80.

## V. FIRST CAUSE OF ACTION

175.     Valentín repeats and realleges each and every preceding allegation as if fully set

herein.

176.     Defendants' actions and/or omissions constitute violations of the ADEA.

177.     SS, SS-PR and Amgen are jointly and severally liable to Valentín for backpay had

he not been deprived of employment because of his age. As a result of defendants'

discriminatory conduct, Valentín is entitled to injunctive relief in the form of

reinstatement and of an order to cease and desist of any further discriminatory conduct

against him because of his age and/or for having engaged in protected activity.

### VI. SECOND CAUSE OF ACTION

178.     Valentín repeats and realleges each and every preceding allegation as if fully set

herein.

179.     Valentín engaged in protected conduct under the ADEA when he opposed

discriminatory practices and when he filed internal complaints with defendants.

180.     As a result of Valentín' assertion of his rights, Valentín was subjected to a slew of

adverse employment actions, including his termination from employment.

181.     Defendants' conduct against Valentín constitutes retaliation in violation of the

ADEA.

182.     As a result of defendants' retaliation against Valentín, SS, SS-PR and Amgen are

jointly and severally liable to Valentín for backpay and economic damages.

### VII. THIRD CAUSE OF ACTION

183.     Valentín repeats and realleges each and every preceding allegation as if fully set

herein.

184.     Defendants' discriminatory and retaliatory practices against Valentín were willful and/or carried out with reckless indifference towards Valentín' rights under federal law.

185.     Defendants' discriminatory and retaliatory conduct constitutes a willful violation of the ADEA and, as a result thereof, SS, SS-PR and Amgen are jointly and severally liable to Valentín for liquidated damages equal to twice the amount of his backpay.

## VIII. FOURTH CAUSE OF ACTION

186.     Valentín repeats and realleges each and every preceding allegation as if fully set herein.

187.     Defendants' conduct constitutes discrimination on the basis of age under Law No. 100.

188.     Valentín has suffered severe emotional and economic damages as a result of defendants' discrimination.

189.     Defendants are liable to Valentín for double the damages proximately caused to Valentín as a result of their discrimination against him on the basis of age.

## IX. FIFTH CAUSE OF ACTION

190.     Valentín repeats and realleges each and every preceding allegation as if fully set herein.

191.     Valentín engaged in protected conduct under Law No. 115 when he filed internal complaints in his workplace and when he reported for treatment at the SIFC.

192.     As a result of engaging in protected conduct, defendants retaliated against Valentín in violation of Law No. 115.

193.     Valentín engaged in protected conduct under Law No. 115 when he filed his internal complaints and when he reported for treatment to the SIFC.

194.     Defendants' conduct constitutes retaliation in violation of Law No. 115.

195.     Valentín has suffered severe emotional and economic damages as a result of defendants' retaliation against him.

196.     Defendants are liable to Valentín for double the economic, emotional and compensatory damages proximately caused to Valentín as a result of their retaliation.

## X. SIXTH CAUSE OF ACTION

197.     Valentín repeats and realleges each and every preceding allegation as if fully set herein.

198.     Valentín was discharged without just cause in violation of Law No. 80, and therefore, Valentín is entitled to indemnity in the amount of $14,287.60 under Law No. 80, plus costs and attorneys' fees.

199.     Defendants are liable for these amounts.

## XI. DEMAND FOR JURY TRIAL

200.     Valentín hereby demands that all of his causes of action be tried before a jury.

**WHEREFORE**, all premises considered, Valentín prays from this Honorable Court the following relief:

1.   An order directing defendants to reinstate Valentín and to cease and desist of any further discriminatory and retaliatory conduct against him;

2.    Loss of income, for the period during which Valentín has been deprived of his compensation;

3.    Lost benefits, both past and future;

4.    Compensatory and emotional damages in an amount not less than $1,000,000.00;

5.   An award of liquidated damages equal to twice the back pay and fringe benefits lost by Valentín;

6.   An award of double compensatory damages under Law No. 100;

7.   An award of double compensatory damages under Law No. 115;

8.   Indemnification pursuant to Law No. 80 in the total amount of $14,287.60, plus costs and attorneys' fees;

9.   An award of reasonable attorneys' fees, together with costs, litigation expenses and necessary disbursements;

10.   Prejudgment interests;

11.   An income tax differential for any amount to be paid by Valentín in excess of his usual personal income tax rate as a result of compensation for lost income and/or front pay received as relief for defendants' discriminatory and retaliatory conduct; and

12.   Any other remedies which this court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 27th day of September, 2016.

**LAW OFFICE OF CARLOS VERGNE**
24 Mariana Bracetti St., 2nd Floor
San Juan, PR 00918
Tel. (787) 753-3799
Fax (787) 759-8429
e-mail: carlosvergne@aol.com

*s/Carlos M. Vergne Vargas*
CARLOS M. VERGNE VARGAS
USDCPR No. 209611

**GONZÁLEZ MUÑOZ LAW OFFICES, PSC**
P.O. Box 9024055
San Juan, PR 00902-4055
Tel. (787) 766-5052
Fax (787) 766-5551
e-mail: info@gonzalezmunozlaw.com

*s/Juan Rafael González Muñoz*
JUAN RAFAEL GONZÁLEZ MUÑOZ
USDCPR No. 202312